UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x

KATHY CAMACHO; JUSTINE RODRIGUEZ;
DERICK MASON; NICOLE FLUDD; and
CYNTHIA NEAT, on Behalf of Themselves and All
Others Similarly Situated,

|  |  |
|---|---|
| Plaintiffs, | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| - against - | |

CITY OF NEW YORK; PAUL SMITH,
Correction Officer, in his individual capacity;
A. REED, Correction Officer, Shield # 12988,
in her individual capacity; SCOTT AMBROSE, Correction Officer,
in his individual capacity; CECIL PHILLIPS, Correction Officer,
in his individual capacity; EPIFANO VASQUEZ, Correction Officer,
in her individual capacity; CHRISTINA BREWLEY, Correction Officer,
in her individual capacity; D. SPRY, Correction Officer, Shield # 1507,
in his individual capacity, CO COSICO, Correction Officer, Shield # 1123,
in his individual capacity; CO GOLLUB, Correction Officer,
in his individual capacity;and JOHN/JANE DOES 1-30
Correction Officers, in their individual capacities,

Defendants.
--------------------------------------------------------------------------x

Plaintiffs Kathy Camacho, Justine Rodriguez, Derick Mason, Nicole Fludd, and

Cynthia Neat (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated

(collectively, the "Class"), for their Complaint, allege as follows:

## PRELIMINARY STATEMENT

1.      The City of New York and a group of its Correction Officers at Rikers

Island have embarked on a campaign of arresting visitors who bring books to Rikers Island.

1

2.      Plaintiffs are five of the unlucky visitors who brought books with them to Rikers Island, either as gifts for the inmates whom they were visiting or to read themselves while they waited.  In some cases, these books were wet or stained, either due to inclement weather or due to normal wear and tear.  In one case, the book was new.

3.      In all cases, Defendant Correction Officers (hereinafter the "Individual Defendants") assumed, with no cause whatsoever, that the books contained synthetic marijuana, or "K2," and branded these innocent visitors as drug smugglers.

4.      Plaintiffs all spent hours, if not a full day, detained for nothing more than bringing a book to prison.  They were criminally charged with felonies before having their charges dismissed at their initial court appearances following their arraignments.

5.      Even after their criminal charges were dropped, Plaintiffs continued to be punished for crimes they did not commit.

6.      Plaintiffs were all banned from visiting their loved ones—in some cases their significant other or their child—at Rikers Island as a result of these false arrests and false accusations.

7.      Making matters worse, their loved ones were punished as well.  The inmates who were being visited at the time of these arrests were all banned from future contact visits—all because a friend or loved one came to visit them with a book in hand.

8.      Plaintiffs committed no crime, but languished in prison cells and faced life-altering criminal charges.  Even when the criminal process concluded with their exoneration, they were prevented from visiting close friends and family at all New York City jail facilities. They now must live with the ongoing trauma, distress, and fear from these encounters.

9.      Plaintiffs bring this civil rights lawsuit on behalf of themselves and all those similarly situated to remedy these violations of their rights secured by New York law and the United States Constitution.

## JURISDICTION AND VENUE

10.     This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and New York State common law.

11.     This Court has subject matter jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs' claims arise under the laws of the United States, namely 42 U.S.C. § 1983, and seek redress of the deprivation, under color of state law, of rights guaranteed by the Constitution of the United States.

12.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

13.     On May 15, 2019, Plaintiff Rodriguez filed a notice of claim pursuant to General Municipal Law § 50-i.

14.     Thirty days have elapsed since service of such notice.  Defendants have neglected or refused to make an adjustment or payment thereof.

15.     On May 15, 2019, Plaintiff Mason filed a notice of claim pursuant to General Municipal Law § 50-i.

16.     Thirty days have elapsed since service of such notice.  Defendants have neglected or refused to make an adjustment or payment thereof.

17.     On May 3, 2019, Plaintiff Fludd filed a notice of claim pursuant to General Municipal Law § 50-i.

3

18.     Thirty days have elapsed since service of such notice.  Defendants have neglected or refused to make an adjustment or payment thereof.

19.     On March 27, 2019, Plaintiff Neat filed a notice of claim pursuant to General Municipal Law § 50-i.

20.     Thirty days have elapsed since service of such notice.  Defendants have neglected or refused to make an adjustment or payment thereof.

21.     On May 17, 2019, Plaintiff Neat testified at a hearing pursuant to General Municipal Law § 50-h.

22.     Venue lies in this Court pursuant to 28 U.S.C. § 1391(b) because: Defendant City of New York resides in this judicial district; upon information and belief, many Individual Defendants reside in this District; and Plaintiffs' claims arose in this judicial district.

## JURY DEMAND

23.     Plaintiffs demand trial by jury in this action.

## PARTIES

24.     Plaintiff Kathy Camacho is a citizen of the United States and a resident of New York.

25.     Plaintiff Justine Rodriguez is a citizen of the United States and a resident of New York.

26.     Plaintiff Derick Mason is a citizen of the United States and a resident of New York.

4

27.     Plaintiff Nicole Fludd is a citizen of the United States and a resident of New York.

28.     Plaintiff Cynthia Neat is a citizen of the United States and a resident of New York.

29.     Defendant City of New York (the "City") is a municipal corporation that, through its Department of Correction ("DOC"), operates the various correctional facilities located on Rikers Island.

30.     Defendant Paul Smith is a Correction Officer employed by the City at its Rikers Island Correction Facilities.

31.     Defendant A. Reed, Shield #12988, is a Correction Officer employed by the City at its Rikers Island Correction Facilities.

32.     Defendant Scott Ambrose is a Correction Officer employed by the City at its Rikers Island Correction Facilities.

33.     Defendant Cecil Phillips is a Correction Officer employed by the City at its Rikers Island Correction Facilities.

34.     Defendant Epifano Vasquez is a Correction Officer employed by the City at its Rikers Island Correction Facilities.

35.     Defendant Christina Brewley is a Correction Officer employed by the City at its Rikers Island Correction Facilities.

36.     Defendant D. Spry, Shield # 1507, is a Correction Officer employed by the City at its Rikers Island Correction Facilities.

37.     Defendant Cosico, Shield # 1123, is a Correction Officer employed by the City at its Rikers Island Correction Facilities.

38.     Defendant Gollub is a Correction Officer employed by the City at its Rikers Island Correction Facilities.

39.     Defendants JOHN/JANE DOE ##1-30 are and were at all times relevant herein officers, employees, and agents of the New York City Department of Correction and the City of New York.  Defendants JOHN/JANE DOE ##1-30, whose actual names and shield numbers Plaintiffs have been unable to ascertain notwithstanding reasonable efforts to do so, but who are being sued herein by the fictitious designation "John/Jane Doe," were at all times relevant herein officers, employees, and agents of the New York City Department of Correction. On the date of the incidents set forth herein, they were assigned to security at Rikers Island. Defendants JOHN/JANE DOE ##1-30 are being sued herein in their individual capacities.

## FACTUAL BACKGROUND

### *Kathy Camacho's Unlawful Arrest and Prosecution*

40.     On September 2, 2018, at approximately 9:00 a.m., Plaintiff Kathy Camacho arrived at Rikers Island to visit her son.

41.     Ms. Camacho brought 2 packages with her, including a book of crossword puzzles.

42.     When Ms. Camacho arrived at the Benjamin Ward Visitors Center, Ms. Camacho was searched by Correction Officers, passed through a metal detector, and sniffed by canines without issue.  She passed through security and continued on her visit to see her son.

6

43.     Upon arriving at the Anna M. Kross Visitor's center, Ms. Camacho again passed through the metal detectors and was sniffed by canines at security without issue.  She then entered the line to retrieve her packages.

44.     All of a sudden, Defendant Gollub and Defendants John/Jane Does screamed at her that she was under arrest.  Defendants accused Ms. Camacho of attempting to smuggle synthetic marijuana (hereinafter "K2") into the prison.  The officers accused her of carrying K2 liquid on the pages of the book of crossword puzzles contained in one of the packages she brought with her.

45.     The book of crossword puzzles Ms. Camacho had brought with her did not contain K2.

46.     There was no probable cause for Ms. Camacho's arrest.

47.     Ms. Camacho told Defendant Gollub and Defendants John/Jane Does that the packages she brought with her did not contain K2.

48.     Defendants were unmoved, and Ms. Camacho did not get to see her son. Instead, she was taken off of the line and placed in an empty room, where she sat alone until approximately 5:00 p.m.

49.     At approximately 5:00 p.m., Ms. Camacho was taken to another area where she was searched and then questioned by Defendant Gollub and Defendants John/Jane Does about the packages she had brought with her.  Ms. Camacho again repeated that there was no K2 in either of the packages she brought to the prison.

50.     Ms. Camacho's pleas fell on deaf ears.

7

51.     Three hours later she was brought to central booking in the Bronx.  Ms. Camacho was held in a cell over night before being arraigned in Bronx Criminal Court the following morning.

52.     At her arraignment, Ms. Camacho was charged with promoting prison contraband in the first degree, in violation of New York Penal Law § 205.25, promoting prison contraband in the second degree, in violation of New York Penal Law § 205.20, criminal possession of a controlled substance in the fifth degree, in violation of New York Penal Law § 220.06, criminal possession of a controlled substance in the seventh degree, in violation of New York Penal Law § 220.03, and the unlawful distribution of a synthetic cannabinoid in violation of New York City Administrative Code § 10-203.

53.     The criminal complaint falsely charging Ms. Camacho with bringing K2 into Rikers Island was signed by Defendant Smith.

54.     Ms. Camacho finally was released on her own recognizance at approximately 10:00 am on Monday, September 3, 2018.

55.     Ms. Camacho's seven-year-old and five-year-old grandchildren were staying at her home for the weekend when Ms. Camacho was falsely arrested.  Ms. Camacho was forced to make emergency alternative plans for her grandchildren when she was arrested and detained until the following morning.

56.     All charges against Ms. Camacho were dismissed on motion of the Bronx District Attorney at her first court appearance after arraignment on October 15, 2018.

57.     Nonetheless, even after her criminal charges were dismissed, Ms. Camacho continued to be punished as a result of her false arrest and prosecution.

58.     Ms. Camacho was banned from all New York City correctional facilities—and was unable to visit her son—*for an entire year*.  All for bringing a book of crossword puzzles when she went to visit her son.

59.     Even now that the ban is lifted, Ms. Camacho is fearful of visiting her son, afraid that she will again be arrested for no reason.  When she does visit him, she does not bring anything for him unless it is in the original merchant packaging for fear that she will again be falsely arrested and charged.

60.     Ms. Camacho's son was also punished for his mother's baseless arrest. For six months, her son was prohibited from having contact visits.

### Justine Rodriguez's Unlawful Arrest and Prosecution

61.     On February 20, 2019 at approximately 7:00 p.m., Plaintiff Justine Rodriguez arrived at Rikers Island to visit a friend.

62.     Ms. Rodriguez brought a book from her home with her so that she could read while she waited for her friend to be brought to the visiting room.  It was raining and snowing outside during Ms. Rodriguez's trip to Rikers, and the pages of her book had become wet and wrinkly.

63.     When she arrived at the Benjamin Ward Visitors Center, Ms. Rodriguez was searched by Correction Officers and sniffed by a canine without issue.

9

64.     After passing through security, Ms. Rodriguez was not taken to visit her friend, but was taken to another room where she was searched again, this time more invasively, by multiple Correction Officers and a Captain.

65.     Although no contraband was found during the search, Ms. Rodriguez was placed in a holding cell by Defendants Ambrose, Brewley, Phillips, and Vazquez.

66.     After waiting in the cell in fear for approximately one hour, Ms. Rodriguez was finally told by Defendants Ambrose, Phillips, Brewley, and Vazquez that she was being arrested for carrying K2 on the pages of the book she brought into the prison.  Defendants also stated, in a clear attempt to scare Ms. Rodriguez, that they could "tell" that the (nonexistent) K2 was "laced."

67.     There was no K2 on the pages of the book Ms. Rodriguez brought to the prison.

68.     There was no probable cause for Ms. Rodriguez's arrest.

69.     Ms. Rodriguez was then handcuffed and transferred to another area on Rikers Island where she waited for hours. Throughout this period, Defendants Ambrose, Phillips, Brewley, and Vazquez disparaged Ms. Rodriguez and told her they knew she was guilty of the alleged crimes.

70.     At approximately midnight, Ms. Rodriguez was finally taken to central booking in the Bronx, where she was placed in another cell overnight and the entire following day.

10

71.     On February 21, 2019, at approximately 7:00 p.m., twenty-four hours after Ms. Rodriguez first arrived at Rikers Island, she was arraigned and charged with promoting prison contraband in the first degree, in violation of New York Penal Law § 205.25; promoting prison contraband in the second degree, in violation of New York Penal Law § 205.20; and criminal possession of a controlled substance, in violation of New York Penal Law § 220.03.

72.     The criminal complaint falsely charging Ms. Rodriguez with bringing K2 into Rikers Island was signed by Defendant Vasquez.

73.     All charges against Ms. Rodriguez were dismissed at her first court appearance after arraignment on April 4, 2019.

74.     Even after all criminal charges were dismissed, Ms. Rodriguez and the friend she was visiting continued to be punished based on these false accusations.

75.     Ms. Rodriguez was banned from visiting all New York City correctional facilities for six months.  Ms. Rodriguez appealed that punishment, and her visiting privileges were reinstated on April 22, 2019.

76.     Nonetheless, even after Ms. Rodriguez's punishment was lifted, her friend whom she was visiting when she was arrested was still prohibited from having contact visits with any visitor, including his mother, for months after Ms. Rodriguez's arrest.

77.     Traumatically, Ms. Rodriguez, who has joint custody of her three-year-old son, was supposed to pick him up on the afternoon of February 21, 2019 to spend the next four days with him.  Because of her baseless arrest, she had to frantically call her son's father to pick him up and keep him until she was released.  As a result, her son's father missed a day of work

and her son, who was expecting his mother, was traumatized when she was absent at pick up and the next day.  When he finally saw her after Ms. Rodriguez was released, he cried hysterically and kept asking her where she was.

***Derick Mason's Unlawful Arrest and Prosecution***

78.     On February 20, 2019 at approximately 4:00 p.m., Plaintiff Derick Mason arrived at Rikers Island to visit a friend.

79.     Mr. Mason brought a novel from his house for his friend to read.  It was raining and snowing outside during Mr. Mason's trip to Rikers, and the pages of his book had become damp during the trip.

80.     When he arrived at the Benjamin Ward Visitors Center, Mr. Mason was searched by Correction Officers and sniffed by a canine without issue.

81.     After passing through security, Mr. Mason was not taken to visit his friend, but was taken to another room where he was searched again, this time more invasively.

82.      No contraband was discovered during this search of Mr. Mason.

83.     Mr. Mason was immediately handcuffed, told he was under arrest, and placed in a holding cell by Defendants Brewley, Spry, and Vazquez.

84.     After spending hours in a cell wondering what he had done wrong, Mr. Mason was eventually told by Defendants Brewley, Spry, and Vazquez that he was arrested for attempting to smuggle K2 soaked on the pages of his book into the prison.

85.     There was no K2 on the pages of the book Mr. Mason brought to the prison.

12

86.     There was no probable cause for Mr. Mason's arrest.

87.     After spending hours waiting in a holding cell, Mr. Mason was transferred to another area of Rikers Island, where he was placed in a cell for another several hours. Throughout this entire period, Defendants Brewley, Spry, and Vazquez disparaged Mr. Mason and told him they knew he was guilty of the alleged crimes.

88.     Eventually, Mr. Mason was taken to central booking in the Bronx where he spent the night and the entire following day.

89.     On February 21, 2019, at approximately 10:30 p.m., thirty hours after Mr. Mason first arrived at Rikers Island, he was arraigned and charged with promoting prison contraband in the first degree, in violation of New York Penal Law § 205.25; promoting prison contraband in the second degree, in violation of New York Penal Law § 205.20; criminal possession of a controlled substance, in violation of New York Penal Law § 220.03; and unlawful possession of marijuana, in violation of the New York Penal Law § 221.05.

90.     The criminal complaint falsely charging Mr. Mason with bringing K2 into Rikers Island was signed by Defendant Vasquez.

91.     All charges against Mr. Mason were dismissed at his first court appearance after arraignment on April 4, 2019.

92.     Even after all criminal charges were dismissed, Mr. Mason and his friend were still punished based on these false accusations.

93.     Mr. Mason was banned from visiting all New York City correctional facilities for six months and could not see his friend during that time.

94.     Mr. Mason's friend, whom he was visiting when he was arrested, was prohibited from having contact visits with any visitor for a period of six months.

95.     Mr. Mason missed two days of work because of this baseless arrest and lost his job as a bartender after back-to-back days where he could not cover his shift.  It took months for Mr. Mason to find new employment.

***Nicole Fludd's Unlawful Arrest and Prosecution***

96.     On February 28, 2019, Plaintiff Nicole Fludd arrived at Rikers Island to visit her boyfriend.

97.     Ms. Fludd brought an old book she had found in her aunt's closet to give to her boyfriend.  The book was depreciating with age, and certain pages were discolored or stained.

98.     Upon arrival at the Benjamin Ward Visitor's center, Ms. Fludd was searched by Correction Officers and sniffed by a canine without issue.

99.     After passing through security, however, Ms. Fludd was not permitted to see her boyfriend.

100.    Instead, she was taken to a separate room by Correction Officers and searched again, this time more invasively, by Defendant Reed and Defendants John/Jane Does.

101.    No contraband was discovered during this search of Ms. Fludd.

102.    Nevertheless, Ms. Fludd was handcuffed by Defendant Reed and Defendants John/Jane Does and placed in a holding cell at Rikers Island.

103.    When Ms. Fludd questioned why she was being arrested when she had done nothing unlawful, she was eventually told that there was K2 on the pages of the book she had brought to the prison.

104.    There was no K2 on the pages of the book Ms. Fludd brought to the prison.

105.    There was no probable cause for Ms. Fludd's arrest.

106.    Nevertheless, Ms. Fludd languished in a holding cell for hours.

107.    While waiting in the cell, Ms. Fludd observed two additional persons arrested for allegedly bringing K2 into Rikers Island via books.  Both of these arrestees also protested that they did not have K2 and were only bringing books for inmates at the time of their arrests.

108.    After hours in a holding cell at the visitor's center, Ms. Fludd was transferred to another cell within Rikers Island, where she remained for several more hours.

109.    After hours in holding cells at Rikers Island, Ms. Fludd was eventually taken to central booking in the Bronx at around 12:00 a.m.

110.    Ms. Fludd was eventually arraigned in Bronx Criminal Court and charged with promoting prison contraband in the first degree, in violation of New York Penal Law § 205.25; promoting prison contraband in the second degree, in violation of New York Penal Law § 205.20; and possession of synthetic marijuana in violation of New York City Rules and Regulations § 9.2.

111.   The criminal complaint falsely charging Ms. Fludd with bringing K2 into Rikers Island was signed by Defendant Smith.

112.   All charges against Ms. Fludd were dismissed at her first court appearance after arraignment on March 19, 2019.

113.   Nonetheless, even after all criminal charges were dismissed, Ms. Fludd and her boyfriend continued to be punished based on these false accusations.

114.   Ms. Fludd was banned from visiting all New York City correctional facilities for six months and was not able to see her boyfriend during that time period.

115.   Ms. Fludd's boyfriend was prohibited from having contact visits with any visitor for a period of six months.

116.   Ms. Fludd also was forced to miss a day of work as a result of her arrest. Ms. Fludd was not paid for this day that she unwillingly had to take off from work.

*Cynthia Neat's Unlawful Arrest and Prosecution*

117.   On March 6, 2019 at approximately 1:30 pm, Plaintiff Cynthia Neat arrived at Rikers Island to visit a friend.

118.   Ms. Neat brought two books, one of which was an old Quran, for her friend.

119.   Upon arrival at the Benjamin Ward Visitor's Center, Ms. Neat was searched by Correction Officers and sniffed by a canine without issue.

120.     Once she passed through security, Ms. Neat was not permitted to see her friend, but was told to sit in a booth and not to ask any questions.  She remained in the booth for approximately one hour.

121.     After waiting for an hour, Ms. Neat was searched by Defendant Cosico and another female Correction Officer.

122.     No contraband was discovered during this search of Ms. Neat.

123.     Nevertheless, Ms. Neat immediately was handcuffed by Defendants Cosico and Smith and placed in a holding cell.

124.     Ms. Neat was told that she was being arrested because there was "marijuana residue" on the pages of the book she had brought to the prison.

125.     Ms. Neat was later told that she was not being arrested for carrying marijuana residue, but rather that she was being accused of trying to smuggle K2 into Rikers Island on the pages of the books that she had brought.

126.     There was no K2, or any other contraband, on the pages of the book Ms. Neat brought to the prison.

127.     There was no probable cause to arrest Ms. Neat.

128.     Nevertheless, Ms. Neat sat in a holding cell for eight hours.

129.     Ms. Neat is diabetic and had to use the restroom multiple times while she was held.  Each time, Defendant Cosico and other Officers demeaned and degraded Ms. Neat while accompanying her to use the restroom.

130.    Ms. Neat was then transferred to another cell within Rikers Island, where she remained for approximately one-and-a-half hours.

131.    After almost ten hours confined at Rikers Island, Ms. Neat was eventually taken to central booking in the Bronx, where she was held in another cell overnight.

132.    The following day, almost twenty-four hours after Ms. Neat first arrived at Rikers Island, she was arraigned in Bronx Criminal Court and charged with promoting prison contraband in the first degree, in violation of New York Penal Law § 205.25; promoting prison contraband in the second degree, in violation of New York Penal Law § 205.20; unlawful distribution of a synthetic cannabinoid in violation of New York City Administrative Code § 10-203(a)(1); unlawful distribution of a synthetic cannabinoid in violation of New York City Administrative Code § 10-203(a)(2); and unlawful distribution of a synthetic cannabinoid in violation of New York City Administrative Code § 10-203(a)(3).

133.    The criminal complaint falsely charging Ms. Neat with bringing K2 into Rikers Island was signed by Defendant Smith.

134.    All charges against Ms. Neat were dismissed at her first court appearance after arraignment on March 19, 2019.

135.    Nonetheless, even after all criminal charges were dismissed, Ms. Neat and her friend still were both punished based on false accusations.

136.    Ms. Neat was banned from visiting all New York City correctional facilities for six months and was not able to see her friend during that period.

137.   Even now that this ban has been lifted, Ms. Neat remains afraid to bring her friend any items from her home, including religious materials that he has requested, out of fear it will be used as grounds to arrest her.

138.   Ms. Neat's friend was prohibited from having contact visits with any visitor for a period of six months.

139.   Ms. Neat also was forced to miss three weeks of work.  Ms. Neat works as a home health aide, and her employment was immediately suspended upon her arrest.  She was not reinstated until she could demonstrate to her employer that all charges had been dismissed.

140.   Ms. Neat lost three weeks of wages as a result of her missed work.  She also lost her regular Sunday client due to her suspension.  Ms. Neat has not been able to find a new client to fill this time slot.

141.   Ms. Neat has a son with special needs.  An aide was taking care of her son while Ms. Neat went to visit her friend at Rikers Island.

142.   Because of Ms. Neat's arrest, Ms. Neat's daughter (who had been told by a Correction Officer that her mother had been arrested for "drugs") had to pick up Ms. Neat's son and take care of him until Ms. Neat was released.  Ms. Neat was extremely worried for her son's well-being the entire time she was detained. She was also humiliated when a Correction Officer told her daughter that she had been arrested for drugs.

*Monell* **Allegations**

143.    All five Plaintiffs were arrested by Correction Officers at Rikers Island and were accused of carrying K2 into prison simply because they brought books with them to give to their friends and family or to read themselves while they waited to visit friends or family.

144.    There was no probable cause to arrest any of the Plaintiffs.

145.    All five Plaintiffs had all charges against them dismissed at their first court appearances following their arraignments.

146.    Despite these immediate dismissals, all five Plaintiffs were banned from visiting all New York City correctional facilities for a period of six months to one year.

147.    Despite these immediate dismissals, the persons whom Plaintiffs were visiting were all prohibited from having contact visits for months.

148.    Upon information and belief based on the similarity of the circumstances of these arrests, Defendant the City of New York has a pattern, practice, custom, or policy of: (1) arresting persons who bring books with them to visit inmates on Rikers Island without probable cause; (2) charging persons who bring books with them to visit inmates on Rikers Island with promoting prison contraband and related crimes on a false and unfounded belief that visitors carrying books onto Rikers Island are smuggling K2 to the inmates they are visiting; (3) banning persons who bring books with them to visit inmates from visiting any New York City correctional facility for a period of six months to one year even after the criminal charges are determined to be unfounded; and (4) banning inmates on Rikers Island whose visitors bring

books onto Rikers Island from receiving contact visits for a period of six months even after their

visitors' criminal charges are determined to be unfounded.

## CLASS ACTION ALLEGATIONS

149.    Plaintiffs bring this suit as a class action under the Federal Rule of Civil

Procedure 23(b)(1)(A), 23(b)(2) and 23(b)(3), on behalf of themselves and other individuals

similarly situated who (a) were arrested at Rikers Island for allegedly carrying K2 into the prison

on the pages of books or other paper materials; and (b) had all criminal charges against them

dismissed.

150.    All of the members of the Class were injured as a result of Defendants'

conduct.

151.    Defendants arrested persons arriving at Rikers Island carrying books based

on a belief that these persons are carrying K2 on the pages of their books.  The five named

Plaintiffs all received identical treatment and, given the number of visitors to Rikers Island who

bring books for inmates or for themselves to read while they wait, there is good reason to believe

there are dozens of additional class members who were subjected to the same unlawful

treatment.

152.    Accordingly, the members of the Class are so numerous that joinder of all

Class members is impracticable.

153.    The questions of law and fact presented by Plaintiffs are common to other

members of the Class.  Among others, the questions of law and fact common to the Class are:

a. Whether the U.S. Constitution or New York common law
   authorize a Correction Officer to arrest and prosecute a person for
   promoting prison contraband on the basis of that person bringing a
   book or paper with them into a prison;

b. Whether members of the Class are entitled to relief and, if so, the
   nature and extent of that relief, including without limitation the
   amount of monetary damages.

154.   Common issues of law and fact, including without limitation those set
forth above, predominate over any individual issues.

155.   The claims and practices alleged herein are common to all members of the
Class.

156.   The violations suffered by Plaintiffs are typical of those suffered by the
Class, as all members of the Class were arrested at Rikers Island for allegedly carrying K2 into
the prison on the pages of books and had all criminal charges against them dismissed.

157.   Plaintiffs have no conflict of interest with any Class members, are
committed to the vigorous prosecution of all claims on behalf of the Class, and will fairly and
adequately protect the interests of the Class.

158.   Counsel competent and experienced in federal class action and federal
civil rights litigation has been retained to represent the class.  Emery Celli Brinckerhoff & Abady
LLP is a law firm with offices in New York City with extensive experience in complex civil
rights litigation and class action lawsuits.  Romano & Kuan PLLC is a law firm in New York

City with extensive experience in complex civil rights litigation and knowledge of New York criminal procedure and practice.

159.     This class action is superior to any other method for the fair and efficient adjudication of this legal dispute, as joinder of all Class members is impracticable.  The damages suffered by members of the Class, although substantial, are small in relation to the extraordinary expense and burden of individual litigation and therefore it is highly impractical for such Class members to attempt individual redress for damages.

160.     There will be no extraordinary difficulty in the management of this class action.

161.     Inconsistent or varying adjudications with respect to individual class members would establish incompatible standards of conduct for the party opposing the class.

162.     Final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
False Arrest and False Imprisonment
(All Plaintiffs and those similarly situated—Defendant City of New York)

163.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in the foregoing paragraphs of this complaint with the same force and effect as though set forth herein.

164.     Plaintiffs were wrongfully and illegally arrested due to Defendant City of New York's unlawful pattern, practice, custom, or policy of arresting persons without probable cause who bring books with them to Rikers Island.

165.     The wrongful, unjustifiable, and unlawful apprehensions, arrests, and

detentions of Plaintiffs were carried out without any basis, without Plaintiffs' consent, and without probable cause or reasonable suspicion.

166. Defendant City of New York intended to confine Plaintiffs and, in fact, confined Plaintiffs, and Plaintiffs were aware of their confinement.

167. At all relevant times, Plaintiffs were unlawfully, wrongfully, and unjustifiably held under arrest, deprived of their liberty, and falsely charged.

168. At all relevant times, the unlawful, wrongful, and false arrests of Plaintiffs were without basis and without probable cause or reasonable suspicion.

169. As a direct and proximate result of the misconduct detailed above, Plaintiffs suffered emotional distress, loss of liberty damages, and all damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Malicious Prosecution
(All Plaintiffs and those similarly situated—Defendant City of New York)

170. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the foregoing paragraphs of this complaint with the same force and effect as though set forth herein.

171. Plaintiffs were wrongfully and illegally arrested due to Defendant City of New York's unlawful pattern, practice, custom, or policy of arresting persons who bring books with them to Rikers Island without probable cause and charging them with crimes related to a false belief that visitors carrying books onto Rikers Island are bringing K2 onto Rikers Island.

172. The City of New York acted maliciously and without justification when it commenced criminal proceedings against Plaintiffs.

173.    The City of New York commenced these charges falsely, maliciously, in bad faith, and without probable cause.

174.    All proceedings in criminal court against Plaintiffs were terminated in Plaintiffs' favor.

175.    As a direct and proximate result of the misconduct detailed above, Plaintiffs suffered emotional distress, loss of liberty damages, and all damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
False Arrest and False Imprisonment
(All Plaintiffs—All Individual Defendants)[1]

176.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the foregoing paragraphs of this complaint with the same force and effect as though set forth herein.

177.    The Individual Defendants wrongfully and illegally arrested Plaintiffs or failed to intervene in the wrongful and illegal arrests of Plaintiffs.

178.    The wrongful, unjustifiable, and unlawful apprehensions, arrests, and detentions of Plaintiffs were carried out without any basis, without Plaintiffs' consent, and without probable cause or reasonable suspicion.

179.    The Individual Defendants intended to confine Plaintiffs and, in fact, confined Plaintiffs, and Plaintiffs were aware of their confinement.

---

[1] Plaintiff Kamacho brings her individual claims against Defendants Gollub, Smith, and John Doe Defendants. Plaintiff Rodriguez brings her individual claims against Defendants Ambrose, Brewley, Phillips and Vazquez. Plaintiff Mason brings his individual claims against Defendants Brewley, Spry and Vazquez.  Plaintiff Fludd brings her individual claims against Defendants Reed, Smith, and John Doe Defendants.  Plaintiff Neat brings her individual claims against Defendants Cosico and Smith.

180.    At all relevant times, the Individual Defendants acted forcibly in apprehending and arresting Plaintiffs.

181.    At all relevant times, Plaintiffs were unlawfully, wrongfully, and unjustifiably held under arrest, deprived of their liberty, and falsely charged.

182.    At all relevant times, the unlawful, wrongful, and false arrests of Plaintiffs were without basis and without probable cause or reasonable suspicion.

183.    The Individual Defendants' misconduct occurred without any fault or provocation on the part of Plaintiffs.

184.    The Individual Defendants acted under pretense and color of state law. The Individual Defendants acted beyond the scope of their authority and jurisdiction to willfully, knowingly, and intentionally deprive Plaintiffs of their constitutional rights as secured by the Fourth and Fourteenth Amendment to the United States Constitution.

185.    As a direct and proximate result of the misconduct detailed above, Plaintiffs suffered emotional distress, loss of liberty damages, and all damages hereinbefore alleged.

**FOURTH CAUSE OF ACTION**
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments
Malicious Prosecution
(All Plaintiffs—all Individual Defendants) [2]

186.    Plaintiffs repeat and reallege the above paragraphs as if the same were fully set forth at length herein.

---

[2] Plaintiff Kamacho brings her individual claims against Defendants Gollub, Smith, and John Does Defendants. Plaintiff Rodriguez brings her individual claims against Defendants Ambrose, Brewley, Phillips and Vazquez. Plaintiff Mason brings his individual claims against Defendants Brewley, Spry and Vazquez.  Plaintiff Fludd brings her individual claims against Defendants Reed, Smith, and John Doe Defendants.  Plaintiff Neat brings her individual claims against Defendants Cosico and Smith.

187.   The Individual Defendants acted maliciously and without justification commenced criminal proceedings against Plaintiffs.

188.   The Individual Defendants commenced these charges falsely, maliciously, in bad faith, and without probable cause.  At no subsequent point did any Individual Defendant attempt to intervene and prevent the unlawful prosecution of Plaintiffs.

189.   All proceedings in criminal court against Plaintiffs were terminated in Plaintiffs' favor.

190.   The Individual Defendants acted under pretense and color of state law.

191.   The Individual Defendants acted beyond the scope of their authority and jurisdiction to willfully, knowingly, and intentionally deprive Plaintiffs of their constitutional rights as secured by the Fourth and Fourteenth Amendment to the United States Constitution.

192.   As a direct and proximate result of the misconduct detailed above, Plaintiffs suffered emotional distress, loss of liberty damages, and all damages hereinbefore alleged.

**FIFTH CAUSE OF ACTION**
Common Law False Arrest and False Imprisonment
(Plaintiffs Rodriguez, Mason, Fludd, and Neat—All Defendants) [3]

193.   Plaintiffs repeat and reallege the above paragraphs as if the same were fully set forth at length herein.

194.   The Individual Defendants wrongfully and illegally arrested Plaintiffs or failed to intervene to prevent the wrongful and illegal arrests of Plaintiffs.

---

[3] Plaintiff Rodriguez brings her individual claims against Defendants Ambrose, Brewley, Phillips and Vazquez. Plaintiff Mason brings his individual claims against Defendants Brewley, Spry and Vazquez.  Plaintiff Fludd brings her individual claims against Defendants Reed, Smith, and John Doe Defendants.  Plaintiff Neat brings her individual claims against Defendants Cosico and Smith.

195.     The wrongful, unjustifiable, and unlawful apprehensions, arrests, and detentions of Plaintiffs were carried out without any basis, without Plaintiffs' consent, and without probable cause or reasonable suspicion.

196.     At all relevant times, the Individual Defendants acted forcibly in apprehending and arresting Plaintiffs.

197.     At all relevant times, Plaintiffs were unlawfully, wrongfully, and unjustifiably held under arrest, deprived of their liberty, and falsely charged.

198.     At all times, the unlawful, wrong, and false arrest of Plaintiffs were without basis and without probable cause or reasonable suspicion.

199.     The Individual Defendants' misconduct occurred without any fault or provocation on the part of Plaintiffs.

200.     The Individual Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard for Plaintiffs' rights, privileges, welfare, and well-being, and are guilty of egregious and gross misconduct toward Plaintiffs.

201.     Defendant City of New York, as the employer of the Individual Defendants, is responsible for the Individual Defendants' wrongdoing under the doctrine of *respondeat superior*.

202.     As a direct and proximate result of the misconduct detailed above, Plaintiffs suffered emotional distress, loss of liberty damages, and all damages hereinbefore alleged.

### SIXTH CAUSE OF ACTION
Common Law Malicious Prosecution

(Plaintiffs Rodriguez, Mason, Fludd, and Neat —All Defendants) [4]

203.    Plaintiffs repeat and reallege the above paragraphs as if the same were fully set forth at length herein.

204.    The Individual Defendants acted maliciously and without justification commenced criminal proceedings against Plaintiffs.

205.    The Individual Defendants commenced these charges falsely, maliciously, in bad faith, and without probable cause.

206.    The Individual Defendants failed to subsequently intervene to prevent the unlawful prosecution of Plaintiffs.

207.    All criminal charges against Plaintiffs were terminated in Plaintiffs' favor.

208.    The Individual Defendants are responsible for the malicious prosecution of Plaintiffs during this entire period.  Defendant City of New York, as the employer of the Individual Defendants, is responsible under the doctrine of *respondeat superior*.

209.    As a direct and proximate result of the misconduct detailed above, Plaintiffs suffered emotional distress, loss of liberty damages, and all damages hereinbefore alleged.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of the Class, request the following relief as against Defendant:

---

[4] Plaintiff Rodriguez brings her individual claims against Defendants Ambrose, Brewley, Phillips and Vazquez. Plaintiff Mason brings his individual claims against Defendants Brewley, Spry and Vazquez.  Plaintiff Fludd brings her individual claims against Defendants Reed, Smith, and John Doe Defendants.  Plaintiff Neat brings her individual claims against Defendants Cosico and Smith.

1.  An order certifying this suit as a class action pursuant to Federal Rule of Civil Procedure 23;

2.  A judgment declaring that Defendants have committed the violations of law alleged in this action;

3.  Injunctive relief prohibiting Defendants' unlawful pattern, practice, policy or custom;

4.  Compensatory damages against Defendants in an amount to be proven at trial;

5.  Punitive damages against the Individual Defendants;

6.  An order awarding Plaintiffs reasonable attorneys' fees, together with the costs and disbursements of this action, pursuant to 42 U.S.C. § 1988 and the inherent powers of this Court; and

7.  Such other and further relief that may be just and proper.

Dated: December 3, 2019
       New York, New York

EMERY CELLI BRINCKERHOFF
& ABADY LLP

By:_____/s/_____
            Matthew D. Brinckerhoff
            Earl Ward
            David B. Berman
        600 Fifth Avenue, 10th Floor
        New York, New York 10020
        (212) 763-5000

ROMANO & KUAN, PLLC
            Julia P. Kuan
        600 Fifth Avenue, 10th Floor
        New York, New York 10020
        (212) 763-5075

*Attorneys for Plaintiffs and the Putative Class*