K2S9CAMC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
KATHY CAMACHO, et al.,

                    Plaintiffs,

          v.                          19 Civ. 11096 (DLC)

CITY OF NEW YORK, et al.,

                    Defendants.
------------------------------x
ARISBEL GUSMAN,

                    Plaintiff,

          v.                          19 Civ. 11691 (DLC)

CITY OF NEW YORK, et al.,

                    Defendants.       Conference
------------------------------x
                                      New York, N.Y.
                                      February 28, 2020
                                      12:05 p.m.

Before:
          HON. DENISE COTE, District Judge

                         APPEARANCES

EMERY CELLI BRINCKERHOFF & ABADY LLP
     Attorneys for Plaintiffs (11 Civ. 11096)
BY:  DAVID B. BERMAN, ESQ.
     MATTHEW D. BRINCKERHOFF, ESQ.

ROMANO & KUAN, PLLC
     Attorneys for Plaintiffs (11 Civ. 11096)
BY:  JULIA P. KUAN, ESQ.

LAW OFFICES OF GOLDMAN & ASSOCIATES
     Attorneys for Plaintiff (11 Civ. 11691)
BY:  STEVEN H. GOLDMAN, ESQ.

NEW YORK CITY LAW DEPARTMENT
OFFICE OF THE CORPORATION COUNSEL
     For Defendants
BY:  MARK D. ZUCKERMAN, Assistant Corporation Counsel

1          (In the robing room)

2          THE COURT:  What are we going to do when we can't meet

3     in person.  I'm waiting to see when everything must be by phone

4     for two months.

5          Anyway, we'll take appearances for the plaintiff.

6          MR. BERMAN:  David Berman from Emery Celli

7     Brinckerhoff & Abady.

8          MS. KUAN:  For the plaintiff, Julia Kuan, from Romano

9     & Kuan.

10          MR. BRINCKERHOFF:  And also for the Camacho

11     plaintiffs, Matt Brinckerhoff, from Emery Celli.

12          MR. GOLDMAN:  For Arisbel Gusman, Steve Goldman.

13          THE COURT:  For the defendants.

14          MR. ZUCKERMAN:  Mark Zuckerman for the appearing

15     defendants in both cases.

16          THE COURT:  Thank you so much.  So I've been referring

17     to these two cases by their last two digits, the '91 and the

18     '96 cases, just for ease of reference.

19          Thank you, counsel, for all the work you've done since

20     our last conference.  I greatly appreciate that.

21          And just to get one issue off the table very quickly.

22     I have a February 26 request from Mr. Zuckerman to move the

23     time to answer from March 3 to March 6.  I know that that's

24     unopposed.  That's in the '96 case and I grant that

25     application.  We'll get an order out reflecting that.

1          So you've done a lot of work, given a lot of thought

2     to how to approach these cases but I thought I may just speak a

3     bit myself.  If there are only 20 or so people who have been

4     arrested through use of this test kit, it's very unlikely there

5     will be a class action in this case.  So that's one issue to

6     resolve, whether or not those numbers are reliable or the

7     numbers are greater.  So that's one thing that has to be

8     explored for whether or not there's a class action that's

9     possible.  One of you point out in your submissions that

10    there's a presumptive number of 40 in this district and that is

11    true.  Obviously presumptions can have exceptions.  But let's

12    at least start there and try to figure out if we have anything

13    near 40 or if it's instead roughly a score of arrests.

14         So I'm going to ask counsel to talk informally with

15    each other about how to satisfy the plaintiffs' genuine

16    interest and desire to know the accuracy of that number and

17    then formalize, after those discussions, the requests so we

18    have the city's answer, whatever it is, formally made to the

19    plaintiffs in the '96 case and if there's any dispute with

20    respect to these issues just write me a letter no longer than

21    two pages.  I'll get you on the phone and help you resolve

22    that.  I'm hoping that you could agree on a protocol that the

23    city would use to confirm that number, maybe in discussions

24    over the next week.  And then maybe by the end of next week

25    then make a formal request that could be formally responded to

1    within a week or two thereafter.

2         Does that sound about right in terms of a schedule,

3    Mr. Zuckerman?

4         MR. ZUCKERMAN:  It just may take -- it depends on what

5    their requests are and what documents are involved.  The first

6    part of that, the discussion next week, I think is -- can

7    certainly be -- we can do that.  But it may take more time to

8    produce documents, depending on what we're talking about.

9         THE COURT:  So what I'm going to do is just have

10   the -- the word presumption is a good one, a presumptive

11   schedule on this issue.  And I'm going to assume that the

12   plaintiffs will serve their written demand for whatever is

13   identified out of your discussions that would satisfy the

14   desire to know the answer to the number by March 6 and that the

15   city will respond to that by March 20, two weeks thereafter.

16   But, of course, if the city needs more time or anyone needs

17   more time you can apply to me and as long as you've been

18   diligent and certainly if there's consent it's more likely to

19   be granted.

20        So March 20 the city will identify number of arrests

21   through the use of the K2 test kit.

22        MR. ZUCKERMAN:  Your Honor, if I may, just to be a

23   little more specific, we're talking about liquid K2 arrests.

24        THE COURT:  Yes.  Maybe I answered too quickly.  There

25   are substances that are brought in, in powder form or rock

1  form?

2          MR. ZUCKERMAN:  Solid.  I just want to be clear on

3  what exactly we're talking about in this case.

4          THE COURT:  Is there a different test used for solid

5  substances than liquid?

6          MR. ZUCKERMAN:  I don't believe -- I think that could

7  be identified without a test kit but I need to confirm that for

8  sure but I believe I can just -- that can just be observed.

9  You don't need a test for that.

10          THE COURT:  To know whether a solid substance is K2?

11          MR. ZUCKERMAN:  Right.

12          MS. KUAN:  If I --

13          THE COURT:  Well, I'll let counsel discuss all these

14  things.  It sounds like there's more to be learned here by the

15  city with respect to these issues and so I'll let you all

16  discuss it next week and, again, if there's a dispute you'll

17  write me a letter no longer than two pages.  But right now,

18  yes, it's the K2 test kit to identify liquid form of K2.

19          It seems to me that this discussion about bifurcation

20  for Monell discovery isn't really one on which we should spend

21  a lot of time.  As I tried to suggest at our first conference,

22  if we just had a single plaintiff, I think they'd want much of

23  the discovery now that -- whether there's a class action or a

24  Monell claim also.  And I think the first level of discovery is

25  how that test was chosen and was it chosen in a way that gave

1    the city a basis to believe it was a reliable test.  I don't

2    want to formulate the test that must be applied under the law

3    but it's the choice of the test.  And then the city chooses the

4    test or DOCCS, or whoever chooses the test, and it gives it to

5    individual officers at Rikers Island who use the test with

6    respect to the plaintiffs in the case before me.  So the second

7    issue I would assume any individual plaintiff would have would

8    be the circumstances under which that test chosen by the city

9    and distributed to officers at Rikers Island, the circumstances

10   under which it was used for the individual plaintiff involved

11   here.  That's a second issue that I think would naturally

12   arise, even if this was just a one-plaintiff case.

13            MR. GOLDMAN:  In one instance it is.

14            THE COURT:  Yes.  In the '91 case.

15            And with respect to the question about who else was

16   arrested through use of this kit that hasn't yet been named as

17   a plaintiff in the '91 case or the '96 case, I think those

18   numbers are appropriate -- numbers and dates probably of

19   arrests and outcome of those arrests, whether there was a

20   successful prosecution or a dismissal, are also appropriate

21   discovery.  In some ways they go to the reliability of the

22   city's perhaps ongoing understanding or emerging understanding

23   of the reliability of the test kit.  But, I don't think at this

24   point the names or the individual circumstances need to be the

25   subject of discovery.  And we can revisit that later on after

1    we learn more about these other issues.  But it sounds like the

2    city already has a handle to some extent on how many occasions

3    the K2 test was used.  So it should be able to identify those

4    dates and the dispositions with respect to those uses.  Were

5    people arrested or not?  And were they ultimately prosecuted?

6    And were those prosecutions successful?

7         MR. ZUCKERMAN:  Just on that with respect to what we

8    have knowledge on.  We certainly have knowledge as to when the

9    test kit was used and it resulted in a positive field test and

10   an arrest but there would not be statistics or records kept as

11   to when the test kit was used but there was no positive test

12   and no arrest.

13        THE COURT:  So that's a matter of paperwork.  So the

14   city did or Rikers Island did not keep a record of the use of

15   the test except when there were positive outcomes?

16        MR. ZUCKERMAN:  Right.

17        THE COURT:  Now, this is interesting.  And the city

18   can reflect on this.  Because I could imagine that the city

19   would want, if this went to trial, to offer evidence that it

20   used the test on occasion when it did not prove to be positive

21   and made no arrests at that time.  So think carefully about

22   whether or not you want to develop that evidence and rely on it

23   down the line.

24        MR. ZUCKERMAN:  It just may turn out to be an estimate

25   as opposed to document after document because I don't think

1    that there are documents as to when the test was used and there

2    was a negative result.

3            THE COURT:  OK.  Well you'll pin that down.

4            MR. ZUCKERMAN:  Yes.

5            MR. GOLDMAN:  Judge, can I ask just for clarification

6    on one point you indicate that the -- circumstances the other

7    K2 tests are relevant.

8            THE COURT:  This is Mr. Goldman, right?

9            MR. GOLDMAN:  Yes, Judge, sorry.  I should start with

10   that probably.

11           That the circumstances of the other K2 tests are

12   relevant but you went on to say that the individual

13   circumstances are not.  I'm not sure if I understand you in

14   terms of the parameters that are relevant.

15           THE COURT:  I'm not going to require the city to

16   disclose the names of the other individuals.

17           MR. GOLDMAN:  What about the circumstances surrounding

18   the arrests?  Like in my case it was a K2 was allegedly found

19   on magazines and I think probably in at least some of their

20   cases as well.  Those I would think that -- those kinds of

21   circumstances would be relevant to the case.

22           THE COURT:  Well at this point this is a K2 test used

23   for liquified form so you mean it would make a difference if it

24   was -- it has to be on material that's going to be given to the

25   prisoner.

1        MR. GOLDMAN:  Right.  Or the material that it was

2   allegedly found on.  Right.  I mean so supposedly smuggling K2

3   in on material of one kind or another.  That material I think

4   would be relevant to our investigation, to our discovery.

5        THE COURT:  OK.  Well discuss these issues with each

6   other.  I don't actually think that needs to be part of it now.

7        MR. GOLDMAN:  OK.

8        THE COURT:  If the city agrees, then fine.

9        I mean let me just be frank with you and I don't think

10  this is in dispute that the smuggling of illegal substances

11  into America's prisons, not just Rikers Island but all prisons,

12  is a big issue now.  And facilities are trying to figure out

13  how to deal with that problem.  And they have to deal with it

14  in a responsible way; responsible to the inmates, responsible

15  to the corrections officers, responsible to visitors,

16  responsible to the Constitution.  So this is an interesting

17  piece of litigation where we're looking at that problem in the

18  context of liquefied K2.  OK.

19       So, Mr. Zuckerman, the burden is going to be on the

20  city to really pin down how reliable this test is.  And even if

21  it's unreliable, that the city had a good reason to believe it

22  was reliable, maybe mistakenly, but good basis to believe it

23  should be used and could be relied on.

24       MR. ZUCKERMAN:  Yes.  And I think that there's going

25  to have to be testing involved in this case to determine all

K2S9CAMC

1    these issues regarding the testing and the lab results.  So I

2    think there's going to have to be testing to determine a lot of

3    those issues.

4           THE COURT:  Well, I'm sure there could be testing.

5    But that's a separate issue from whether or not the city chose

6    to use the test in a responsible fashion.

7           Have you located all the -- all the materials that

8    were tested here?  Have they been preserved?

9           MR. ZUCKERMAN:  To the best of my knowledge, yes.  I

10   had a conversation with the police department this week and

11   they assured me that the 24 --

12          THE COURT:  Sets of materials.

13          MR. ZUCKERMAN:  -- sets of materials have been

14   preserved for testing.

15          THE COURT:  So we've learned that the NYPD found no

16   K2.  So how are you going to test these then to locate K2?

17          MR. ZUCKERMAN:  Well I would just say that the NYPD

18   did not find that there was not K2.  All they can determine is

19   that based upon their test protocols they could not identify.

20   That doesn't mean that there isn't K2.  There are laboratories

21   with substantial specialization in this area that if these

22   items can be tested can determine -- hopefully determine one

23   way or the other whether there is K2.

24          THE COURT:  Good.  So you've identified those

25   laboratories?

1          MR. ZUCKERMAN:  We have a laboratory, yes.

2          THE COURT:  And which one is that?

3          MR. ZUCKERMAN:  I think it's called NMS.

4          MS. KUAN:  NMS?  What does that stand for?

5          THE COURT:  Counsel this will be a great thing to add

6     to your list for next week.  Because wouldn't it be wonderful

7     to have agreement as to what laboratory will test these

8     objects.  And, of course, that may bring a whole host of issues

9     as to whether that lab is reliable at all.  But if the

10    plaintiffs or the defendant want to test these objects, that's

11    something for you to talk about with each other and agree on a

12    protocol that will properly preserve the objects and hopefully

13    reduce the number of disputes about the retesting.

14         MR. ZUCKERMAN:  Just to add one thing.  Your Honor

15    said -- wanted us to identify last time kind of core discovery

16    issues that could lead to a resolution.  Assuming there is no

17    class action for a moment --

18         THE COURT:  And I'm assuming there isn't.

19         MR. ZUCKERMAN:  Then if we just talk about resolving

20    the individual plaintiffs' claims, I think it would be helpful

21    to test these items and get a lab determination whether there

22    is K2 or not K2 or whether they just can't determine it based

23    upon the evidence.  I think that would be kind of a path toward

24    a possible resolution of the case.

25         THE COURT:  Good.  Good.  So, of course, as a

1 theoretical matter, just speaking hypothetically, if the city

2 didn't have a good faith basis for choosing this test, even

3 though there's K2 on it, that might be a problem for the city.

4 So the existence of K2 on it is certainly a very interesting

5 fact. And you're very right. It may have a profound impact on

6 settlement discussions. But as a legal matter, it's just one

7 more layer of issues to address here.

8 Good. So, why don't we add to the work you're going

9 to do next week a discussion of a protocol for testing these

10 materials. And the plaintiffs may have a lab they prefer to

11 use. And you'll discuss it with each other. Hopefully we can

12 have agreement on one lab to do this testing, not multiple.

13 But I'd like a letter by March 6 if there is any

14 dispute about laboratory testing of the named plaintiffs'

15 seized materials.

16 MR. ZUCKERMAN: Your Honor, could we just have a

17 little bit more time on that letter? I think it's going to

18 take more time to discuss among the parties.

19 THE COURT: Sure.

20 MR. GOLDMAN: I'm actually going to be out next week.

21 THE COURT: Shall we say March 13 then, two weeks?

22 MR. BRINCKERHOFF: Could I suggest one thing we might

23 add to that same March 13 letter, which I think the court has

24 already averted to, which is the first question -- I think the

25 testing question is indeed interesting and it may be a fact

1   that will have some impact.  Maybe it won't.  I don't know.

2   But certainly the core question and the core fact is what input

3   the city had, what diligence they conducted in choosing this

4   particular screening test that they then gave to officers to

5   rely upon and make arrests.  And that seems to me to be very

6   much at the core of the most central question.  And getting

7   those materials, what the city did to make the determination

8   that this was the test they would use, the directives on how to

9   use it and the fact that they ought to use it and they could

10  rely upon it, that kind of material that shows what the policy

11  was and how they selected this particular test would strike me

12  as being very much in that same core of material that we've

13  been talking about.

14          THE COURT:  So let's come to your proposed civil case

15  management plan.  You have initial disclosures due March 30.

16  Any reason we can't move that up to March 13?

17          MR. ZUCKERMAN:  It's a little bit quick for

18  defendants.  Maybe we can -- March 20, perhaps.

19          THE COURT:  OK.  March 20 for initial disclosures.

20  I'm going the to assume, then, that your initial document

21  demands and interrogatories are going to be served on each

22  other by March 27, the following Friday.

23          And the city should be well on its way right now, it

24  should have already, I'm sure, been doing this, gathering the

25  core documents about the choice of that exam.

1        So I'm going to assume that the documents will be

2    responded to and produced roughly 30 days later, the end of

3    April.

4        I don't think we're going to push out amendment of

5    pleadings or joinder of parties.  Don't we have the pleadings?

6    What amendments are we thinking about?

7        MR. BERMAN:  I think the only -- depending on how

8    class discovery unfolds, if we need to add more -- if we need

9    to add more defendants.  Right now we have the individual

10   officers who are -- made the arrests but as more people

11   potentially become part of the case or we learn people at the

12   city who were the people behind the policy, obviously we could

13   move for cause to add them.

14       THE COURT:  Yes.  Let's deal with it that way.  So

15   we'll make March 13 also the date for amendment and joinder

16   and, of course, Rule 16 is available if we need to face

17   amendment issues down the line.

18       Let's talk about depositions.  I was a little taken

19   aback with the number of depositions that the parties were

20   suggesting here because to me these are policies that are at

21   issue and procedures.  And the idea that we're going to take 15

22   to 20 depositions to get at that was a little confusing to me.

23       MR. BERMAN:  Your Honor, I think if it's going to

24   be -- if it turns out that it is a policy and practice, we

25   could work out some sort of stipulation, I don't know what it

1   would be with the city that everyone was acting pursuant to

2   that, I suspect that number could be greatly narrowed.  But I

3   think that was provided out of an abundance of caution that to

4   the extent it's going to be disputed that this was -- that the

5   officers weren't acting under individual discretion based on

6   factors that weren't part of a policy, that there is a universe

7   in which we would have to depose all the individual defendants

8   which at this point is between 10 and 15 people alone plus some

9   sort of rule 406(b) deposition of the city and potentially

10  additional officers who were involved.  I think that's where

11  that number came from out of an abundance of caution but if it

12  turns out that this was a streamlined process that everyone was

13  acting pursuant to, that number could of course go greatly

14  down.

15          THE COURT:  Well as we know, field tests are

16  distributed.  They were distributed pursuant to some policy.

17  The test was chosen.  It was distributed.  So why don't we

18  focus discovery on that:  The choice of the test, the

19  distribution of the test with whatever instructions were given

20  to the field about when and how to use it.  And that is going

21  to shed a lot of light.  And then let's make sure if we haven't

22  had meaningful settlement discussions before that date that we

23  take a pause with that information in hand, hopefully with the

24  test results back on the plaintiffs' materials, and see if we

25  can settle.  And if we can't, great, we go forward.

1          Let's say there are five or six depositions the

2     plaintiffs want to take with respect to identification of test,

3     distribution of test with instructions to the field.

4          MR. BERMAN:  On that issue alone, yes, that's

5     absolutely.

6          THE COURT:  Do you want depositions at this initial

7     stage?  You're not giving up your right to take the plaintiffs'

8     depositions.  Do you want individual plaintiffs' depositions at

9     this initial stage?

10          MR. ZUCKERMAN:  I'm not sure it's necessary initially.

11          THE COURT:  OK.  So then if the documents are roughly

12     produced by the end of April and we have six or so depositions

13     to take over May and June and we set July for settlement

14     discussions and then we meet at the end of July and plan if

15     there are cases that resolve the rest of the case, does this

16     make sense?

17          MR. BRINCKERHOFF:  Very much so I would say.

18          MR. BERMAN:  Yes.

19          MR. ZUCKERMAN:  Yes.

20          THE COURT:  So mediation -- forgive me.  Did we decide

21     on a forum?

22          MR. ZUCKERMAN:  For settlement?

23          THE COURT:  Yes.

24          MR. ZUCKERMAN:  No.

25          MS. KUAN:  No.  We haven't discussed it.

K2S9CAMC

1      MR. ZUCKERMAN:  From defendants' perspective a

2  settlement conference with Judge Wang would be fine.

3      THE COURT:  That would be great.  Why look further?

4  We have wonderful mediators.  That would be great.

5      So I'll set you down for mediation with Judge Wang in

6  July.  We'll get out a scheduling order with a late July

7  conference to plan the rest of the schedule.  You'll know a lot

8  by then.

9      Again, any discovery dispute, write me a letter no

10  longer than two pages.  I'll get you on the phone and hear you

11  out.

12      Now, we have a motion to dismiss.

13      MR. GOLDMAN:  I believe it says to my, my client.

14      THE COURT:  That was filed on February 27.  It's a

15  partial motion to dismiss.

16      Do we need that motion to dismiss now, resolved right

17  now?

18      MR. ZUCKERMAN:  I think there are defendants that

19  Mr. Goldman has named that are not in the Camacho action.  The

20  one that I'm most concerned with is the Bronx DA's.

21      THE COURT:  Yes.

22      MR. ZUCKERMAN:  I think that really should not be in

23  the case and I think they want out.

24      THE COURT:  Can we dismiss them on consent?

25      MR. GOLDMAN:  Yes.  I think we can do that.

K2S9CAMC

1    THE COURT:  Good.  So I'll let the city get you a stip

2    and then we'll just dismiss this motion to dismiss without

3    prejudice to being refiled later in the case.  But I don't

4    think it really makes a lot of sense.

5        I'm sorry.  I'm looking for something I thought I

6    pulled for counsel.

7        MR. GOLDMAN:  I think that the result of that is not

8    going to affect the litigation.

9        THE COURT:  I'm sorry?

10   MR. GOLDMAN:  I think that you're correct.  The result

11   of that motion to dismiss will not affect the litigation.

12       THE COURT:  Yes.

13       MR. ZUCKERMAN:  Just on a couple other points in the

14   motion.  DOC and NYPD are non-suable entities and they should

15   be out too.  And there are just two other claims that just

16   shouldn't be in the case and this negligent hiring theory and

17   this theory that under state law there was an unreasonable

18   delay as to plaintiffs' arraignment I think both of those

19   issues are really clear and they shouldn't be part of this case

20   either.

21       THE COURT:  I am absolutely not trying to indicate

22   that there isn't merit to the various motions.  But, again, it

23   doesn't go to the core of the litigation and it's just cleaning

24   up around the edges.  And so if it affects discovery I think we

25   should address it now as the claims against the DA would.  If

1    it doesn't, I'm not sure we need to.

2                MR. ZUCKERMAN:  It could affect -- I will just take

3    his negligent hiring claim.  If that claim goes forward all of

4    a sudden we're getting into the hiring decisions of, I don't

5    know, the individual defendants.  That wouldn't be part of the

6    case otherwise.

7                THE COURT:  So I'm going to ask counsel, please, to

8    consult with each other before the opposition is filed and

9    hopefully the opposition will narrow the issues.  But we'll put

10   a briefing schedule on this.

11               Opposition due March 20.  Reply due April 3.

12               Now there's a standing issue with respect to the

13   request for injunctive relief and I just wanted to refer

14   counsel to a recent decision I issued in the Picard case,

15   completely different context, but nonetheless has some standing

16   law.  And that is 2019 WL 6498306.

17               I notice that the city has decided to suspend the use

18   of the test.  Will that decision run for at least the length of

19   this litigation?

20               MR. ZUCKERMAN:  I can't say that.  No, I can't

21   guarantee that.

22               THE COURT:  Good.  Will you give us notice -- give me

23   notice if the suspension is going to be lifted?

24               MR. ZUCKERMAN:  Yes.

25               THE COURT:  How much notice can you give me?  Two

1    weeks?

2              MR. ZUCKERMAN:  I would think that's -- we could do

3    that.

4              THE COURT:  OK.  Good.  So I think we have agreement

5    that this initial phase of the discovery is going to focus on

6    how that test was chosen and how it was distributed in the

7    field, with what instructions for its use.  And there will be

8    testing of the plaintiffs' seized materials, independent

9    testing.  I'll have a motion to dismiss to decide.  You have a

10   schedule to try to resolve this case.  And then we'll have a

11   conference to clean up any remaining discovery if it isn't

12   resolved in July.

13             So I'm going to go around the table and see if there

14   are any other issues we should address.

15             Mr. Goldman.

16             MR. GOLDMAN:  Not that I can think of on my end.  I

17   still kind of agree that doing the motion to oppose -- I just

18   think that it's not going to be relevant in any material

19   fashion to the discovery and I think we could -- I'm mean I've

20   already agreed about the DA's office.  If the defendants insist

21   I'll do it but it doesn't seem to me particularly pertinent.

22             THE COURT:  Well, everyone has a right to bring a

23   motion under the federal rules.  So that's it.

24             MR. GOLDMAN:  Other than that I have nothing to add.

25             THE COURT:  Good.  Thanks so much.  And Mr. Berman

K2S9CAMC

1    anything else?

2          MR. BERMAN:  Just two small questions.  From our meet

3    and confer my impression and from their letter was that

4    defendants intended to file a motion to dismiss in our claim as

5    well and we don't have the non-suable entities or the state law

6    claims that are being referenced.  So I just wondering for our

7    own planning purposes if we could have clarity on whether that

8    motion is still moving forward as well.

9          THE COURT:  I'll let you folks discuss that.

10          Anything else to raise with me?

11          MR. BERMAN:  The only -- my only question you had said

12    testing the named plaintiffs' materials.

13          THE COURT:  Yes.

14          MR. BERMAN:  Would it make sense at this point to test

15    you said all 24 were preserved to test all the materials.  I

16    just don't want to end up in a situation where we test all six,

17    they're all negative for K2, and then they'll have some sort of

18    defense to that's not reflective of any sort of broader issue

19    with the test because they haven't tested the other 18 and they

20    might have had K2 on them.  So I guess if they have all the

21    materials I'm not sure it makes sense to limit that to just the

22    named plaintiffs.

23          THE COURT:  I'll let you all discuss that next week.

24    If you have a dispute that comes out of that, happy to hear you

25    again.

1          MR. BERMAN:  OK.

2          MR. ZUCKERMAN:  If I may just on that issue, your

3    Honor.  I just think that that -- that that would be a

4    difficult thing to do given that these other 16, other than

5    Simone Williams have potential claims.  And to do destructive

6    testing on their evidence could be a problem.

7          THE COURT:  There are third party rights here

8    potentially but I'll let you all discuss that.

9          So Mr. Zuckerman anything else?

10         MR. ZUCKERMAN:  I just want if I can get some clarity

11    on the injunctive relief issue.

12         THE COURT:  Yes.

13         MR. ZUCKERMAN:  Because I did want to move to dismiss

14    based upon the standing issue and go forward with that.  I

15    didn't know whether your Honor was foreclosing that or not.

16    That is an issue I'd like to --

17         THE COURT:  Everyone has a right to bring whatever

18    motion the Federal Rules of Civil Procedure permit them to

19    bring.  I'm not going to limit that and I don't have premotion

20    conferences.

21         That said, I've given you a citation to the Picard

22    case on the standing issue, even though it's not -- it's a

23    completely different context.  But this is a case in which at

24    least some of the plaintiffs may still be experiencing the

25    six-month ban on visitation.  Some of the plaintiffs may still

1  have relatives or friends that they wish to visit in Rikers.

2  One could think of lots of reasons that these individual

3  plaintiffs would have a desire not to have this use of K2 part

4  of their processing as they try to get entry.  And, of course,

5  there's the whole separate issue of is this the kind of

6  infringement of rights, if it is an infringement, and I'm not

7  close to deciding anything on the merits, that's likely to

8  recur that, you know, unless these plaintiffs have standing,

9  who is going to have.  So it's a complex issue.  It seems to me

10  it's something that we could visit again with care if and when

11  the suspension is lifted.  And we will have two weeks notice of

12  that and at that point I'll have an opportunity for everyone to

13  be heard.  But, again, if you want to bring a motion I will

14  decide that motion.

15          MR. ZUCKERMAN:  I just think the problem from our

16  standpoint is that it's a 12(b)(1) motion at this point and --

17          THE COURT:  On not the whole case.

18          MR. ZUCKERMAN:  Not the whole case.

19          THE COURT:  On a claim for relief.

20          MR. ZUCKERMAN:  Right.

21          THE COURT:  One of the claims for relief.

22          MR. ZUCKERMAN:  Right.

23          THE COURT:  So even if you won that, the litigation

24  would go forward.

25          MR. ZUCKERMAN:  Right.

1              But I just think procedurally I think we have to move

2      on the 12(b)(1) as to the injunctive relief.

3              THE COURT:  Oh, you think you forfeited your right to

4      bring a standing argument if you don't move now?

5              I don't think that's true.  You know, I theoretically

6      could raise the issue sua sponte at any time.  It could be

7      raised by the Court of Appeals should it ever have the joy of

8      presiding over this litigation.  So I think you're safe.

9              MR. ZUCKERMAN:  I realize --

10             MR. BRINCKERHOFF:  We would stipulate to allow you to

11     raise Article III jurisdictional issue at any time.

12             MR. ZUCKERMAN:  I know it's not waivable but -- I

13     think courts have also said it should get resolved as early as

14     possible.  I could be wrong about that.

15             THE COURT:  I think it should be if it were going to

16     bring a hold to the litigation or affect the scope of discovery

17     or the number of defendants or any number of things.  It's

18     just, practically speaking here, I don't think it has any

19     impact on the conduct of the litigation at this point.  But you

20     bring the motion.  You control this.  You bring the motion.

21     We'll brief it and decide it.

22             MR. BRINCKERHOFF:  If not, I'll just add.  Because the

23     policy has been suspended, obviously with appropriate notice if

24     it gets reinstated, we are not about to make a motion to seek

25     any kind of immediate injunctive relief.  So it's basically a

1   dead letter unless and until that changes.

2           MR. ZUCKERMAN:  No.  I understand but I still think

3   that --

4           MR. BRINCKERHOFF:  OK.  I just wanted to emphasize

5   that from our perspective.

6           MR. ZUCKERMAN:  The likelihood-of-future-harm prong is

7   still a live issue based upon your complaint.

8           THE COURT:  Thank you so much, counsel.  Have a great

9   weekend.

10           (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25